Good morning, Your Honor. Good morning. To please the Court, I'm John McDonald. I'm here for the appellant, Interior Glass, Inc. And I need to start today with the last development in this appeal, which is the Larson case, which actually relates to the last item I raised in my opening brief, which is the question of whether the citizen is entitled to a hearing, a due process hearing, prior to collection of the tax penalty. And as you know from the briefs, our position is the Court should adhere to this Court's decision in Jolly v. Commissioner, apply the tests established by the Supreme Court in the Matthews case, and weigh whether or not the competing interests should be evaluated, and most critically, determine whether there is a substantial risk of erroneous deprivation. That is the key in all of those cases. The balancing usually comes out even, so the question is, is there a risk of erroneous deprivation? Now, the government wants you to follow the Larson's case. They say point blank that there should never be any pre-collection hearing. On page... You have an opportunity for some kind of a pre-deprivation administrative hearing, don't you? No. Why do you say that? I mean, maybe you don't think it's that great of a process, but one exists. And you, I think, I can't remember from the briefs, you said that you tried to and they said no, we won't give you, tell me the name of the thing. Appeals conference. Appeals conference, yes. Let me move on. That is a very important issue, because if this court, for some reason, is inclined to follow the Larson case, at least break away from that notion, because the Larson case is the first case that has ever suggested that somehow an appeals conference is the equivalent of something you would have in the tax court or in the district court or anywhere else. And as I pointed out in my reply brief, an appeals conference is really just a settlement conference. I've been through dozens. They're very productive. You get to chat back and forth, but it's nowhere near an adjudicative process. But it doesn't have to be. That's the point. For due process, what case says that it has to be adjudicative in order to satisfy due process?  But it's not adjudicative. But I'm asking you what case says that it must be adjudicative to satisfy due process. What case says that? I would go all the way back to the Matthews case, Your Honor. I think the whole process is a flexible concept under that. I agree. It's flexible, but it does require an independent notice and an opportunity to be heard. Notice and an opportunity to be heard by someone who is going to make an impartial decision. Now, you added that last part. Is that language in Matthews? By an impartial individual who has the authority to make a decision? I don't think that wording is in there. Well, Your Honor, that's, as Judge Roffert said, that's what an adjudicative process is. I don't think Judge Roffert said that. I want you to give me the language. Point me to a page, a case on a page that includes within the concept of due process an impartial adjudicator who can make a decision. I want a case that incorporates that specific language. Well, Your Honor, you are putting me on the spot here. I've read a lot of these cases on due process. I can't pull that up right now. I've read a lot of them, too. And generally that's the catchphrase is notice and an opportunity to be heard. And I'm not sure. There is a concept of impartial adjudicators in some cases, but I'm not sure that I've read a case that says in order to satisfy due process, there has to be an adjudicatory process. It's just in my mind that the furthest that I understand it's been pushed is there are obviously many, many instances where the process is reviewed by an administrative judge. And the administrative judge works for the agency, but it is a judicial type of evidentiary hearing by an impartial judge. Isn't there another factor at play here? That is whether, I mean, there are some cases where a post-deprivation hearing is sufficient, aren't there? Your Honor, there are many cases, and the IRS has pointed to those cases. And why isn't that sufficient here? Well, that's my point, Your Honor, is that when you look at the Larson case or you look at a lot of other cases, in this case, we're dealing with $40,000 in penalties. It could be $100,000 on individuals, $200,000. It could be $800,000 for the four years. And at some point, as in the Larson case, the number that's put into the letter is so high that it's never going to be able to get paid. That was $68 million. And I want to point out, all that it takes is some group manager, as in this case, which is a very relatively low level in the IRS, signing that letter. There doesn't have to be anything else. All there has to be is that letter. But that's the original. That's the initial determination. That's not the final determination. And so you have opportunities to challenge that. That's what due process is all about. And I want to focus on the opportunity that the Court has brought up, which is this appeals conference. And as I pointed out, in this case, the appeals conference would have been a sham because there's – and I can tell you, in this case, the appeals conference has no jurisdiction over these penalties. It's right there in the Internal Revenue Manual that I cited. They cannot consider abusive tax avoidance transactions. And the penalties in this case are exactly those penalties that the appeals conference cannot determine. So it would not have been adjudicated. We would have walked in, as I walked into Mr. Yates' appeals conference, and the conferee would say, I can't talk about the penalties. Let's talk about the tax liability in the tax court. That's not a due process hearing. And I do really need to emphasize that Larson is the first case that has said anything like that. The cases that Larson cited, the cases cited by the government, the Country Homes case, the Keller Tank case, the IM's case, those all evolved the question of whether you get a second bite at the apple in the collection due process hearing. I thought actually we had a pretty consistent line of cases that said in the tax context in particular that as long as the post-deprivation review process is robust enough, and here it is, you had a full de novo hearing in the district court and now you're before us, that that's pretty much always sufficient in the tax context. I thought that's not just Larson. It's not like Larson is some radical innovation. Larson is the only case that says the appeals conference is a sufficient pre-collection process. You are absolutely correct, and I think the government has cited probably only half the cases that stand for the proposition you've said, which go back, oh, I'd say 80 years. The cases have said when the government needs to collect a tax, then the need of the government to collect the tax overrides the importance of due process, a flexible standard, and in that situation, the post-deprivation hearing is enough. I think when we get to the Jolly case, which is a penalty case, and the other major penalty case is the Conn case that Jolly followed, they say that in the context of a tax penalty, the rules are different. The government doesn't need to collect huge tax penalties. They need to collect taxes, and, in fact, I was just calculating what Paul Manafort's going to owe. He's got $15 million of fraud. It's going to be $7 million to $8 million of taxes and about $5 million of penalties that he hasn't paid yet. He's not going to pay it anytime soon. He's going to have it on appeal. Those $5 million of penalties are going to be they don't need that money. All right, so that's your position is that the rule that's established for collection of taxes just should not apply at all in the context of penalties. I believe so, Your Honor. I think that is what the Jolly case says. Well, it's a different, yeah, I don't read it quite that broadly. But I guess I don't even buy, I'm not even sure I'd buy that proposition. Why is it that, especially for penalties, I mean, I grant you a few hundred thousand dollars. That's real money, certainly to me, maybe to you as well. But why isn't it enough that you can, as long as you bring the action, you prevail, you get back the money, I think, with interest, right? Why isn't that sufficient protection on the back end? Well, again, the deprivation of property up front, taking the money, I mean, when you go back to many Supreme Court cases such as Snydich, which was a prejudgment garnishment of wages, I think it was less than $100, that temporary deprivation can be a significant right. But the real problem comes in these kind of tax penalty cases where $600,000, $800,000, you can't pay that. I mean, you reach people, I couldn't pay it. I doubt that anyone in this courtroom could just write a check tomorrow for $800,000. Well, I don't know. I mean, the penalties relative to the tax benefits that were trying to be captured here seem to me to be quite modest, no? Well, the tax benefit was a $55,000 deduction, translates even at a higher 40% rate, $22,000, $24,000. So $10,000 penalty, yeah, it's appropriate. I don't dispute that. I mean, you're right that we have cases that say, for example, I'm thinking of indigent folks who are dependent upon some government benefit, and if they are deprived of that on the front end without a full, robust pre-deprivation hearing, the loss of that benefit to them is so devastating that they'll be destitute, homeless, whatever. I mean, I understand that. It just seems like in the tax penalty context, really that's what we're talking about? You're saying the amount of money the government is trying to extract, you know, before you get the full de novo hearing is so exorbitant that your clients in your client's shoes would be left destitute, and we should be that concerned? Yes, Your Honor. I think that's clear in the Jolly case because it was $75. But the Jolly case said that was basically a small amount, and the risk of deprivation was nonexistent. I think every case involving a tax penalty requires the court to determine if there's a substantial risk of erroneous deprivation, even if it's only temporary. I'm running low on time here, Your Honor. I'd like to reserve if I could. May it please the Court, good morning. My name is Teresa McLaughlin, and I represent the government. So unless the Court has any questions, I will confine my discussion to the due process argument, which was all that was required. in the opening argument by opposing counsel. We think that the statutory scheme definitely satisfies due process. Due process is flexible, and it calls for such procedural safeguards as the situation requires. And in the tax context, it's been well settled since the Phillips case decided by the Supreme Court in the 30s that a post-deprivation availability of a refund suit satisfies due process. With respect to the taxes themselves, right? Not to penalties. Well, we would argue that some penalties are just as eligible for this as the taxes themselves. What about these penalties that are at issue in this case? The penalties at issue in this case? The penalties? Go ahead. Well, the Supreme Court held that even the civil fraud penalty, which was at that time 50% of the underpayment, it's now 75% of the underpayment, was a remedial sanction that just allowed the government to recoup the extra costs of enforcing the law and collecting the tax. Is this a civil fraud penalty in this case? No, but this is a penalty for failure to report a listed transaction. But opposing counsel, do you disagree with opposing counsel's representation that under the appropriate statute, the appeals conference does not have authority to negotiate or settle the amount of the penalty imposed? I disagree with opposing counsel, and we think that the availability of an appeals conference is a significant protection that goes a long way toward satisfying due process. But could the appeals conference adjust the penalties that are imposed under the statute at issue here? Yes. They could settle them. And I do want to mention that. Under what authority? Under what authority could the appeals conference adjust the penalties that were assessed in this case? Well, it could settle them or it could. What authority would be used? What statute would authorize the settlement of those penalties? Well, I think there is a provision, I'm not sure, but I think there is a provision in the Internal Revenue Code creating the IRS Office of Appeals as an independent component within the IRS. And so they have authority to compromise cases, very broad authority. Even if the statute at issue says that the penalties can't be negotiated? Well, throughout the Internal Revenue Service, a case can be settled for doubt as to liability, doubt as to collectability, or to promote effective tax administration. So those are pretty broad parameters. I do want to mention that at the time we were briefing this case, we thought that the taxpayer had not requested an appeals conference. We pointed out in our brief that they didn't put anything in the record about requesting one. In the reply brief, the opposing counsel points out that discovery from the taxpayer's accountant shows a request. And I just wanted to mention that in fairness to the government, if that had been developed, we would have liked to point out that although an appeals conference is generally available, guidelines in the Internal Revenue Manual restrict its availability if the statute of limitations on assessment is soon going to expire. And so I think we asked, the statute was going to expire for at least one of the periods in suit. And so they were requested, if you want a conference, please sign this consent to extend. And I guess they didn't want to extend the statute of limitations. But even aside from the unavailability or availability of an appeals conference prior to assessment, there are other opportunities for due process. And particularly in connection with a collection due process hearing, if the IRS files a notice of federal tax lien or proposes to levy to collect a tax or penalty like this, the taxpayer is granted a conference with the IRS Office of Appeals. And the results of that conference can be appealed to the tax court and reviewed by the U.S. Court of Appeals. The existence or amount of a liability can be an issue if the taxpayer has not had a prior opportunity to contest the liability itself. And a prior opportunity would include having had an appeals conference. Now, here there's a question whether if the only way you can get one is to sign a consent to extend the statute of limitations, would that count for purposes of getting an appeals conference or contesting the liability in a collection due process suit? But if it does not count, then that would be another opportunity for an appeals conference. And if the taxpayer didn't want to, you know, didn't want to come forward and actually pay the tax and file a claim for a refund and then a suit, the government could also bring a collection suit, but that again would be just like a refund suit. That would be a complete opportunity to contest the liability for the tax. So this court most recently in Jolly, before the collection due process statutes were enacted, held that the availability of a refund suit satisfied due process in a case involving the frivolous return penalty. So we think here, too, even applying the Matthews v. Eldridge test, the process available does satisfy due process. So unless the court has any other questions. Counsel, it seems that the IRS letter discussing the conference with the appeals office said that the commissioner can determine whether to rescind the penalty under IRC Section 6707A for transactions other than listed transaction. And this is precisely the type of transaction that's at issue here. So what good would the appeals conference actually do? Well, in the statute, this is usually it can't go on. I'm looking for the statutory. The appeals in an appeals conference, they could still settle it depending on doubt as to liability. And that would go to whether this notice, whether the transaction here was similar enough to the transaction in the notice. Why would the letter say that the commissioner can rescind the penalty other than for listed transactions? What does that mean then? Well, I think that that means that the commissioner has to assert the liability. And if there is a listed transaction and it's similar enough and they don't, it's a penalty that the discretion to rescind it is limited. But it could still be settled in an appeals conference. So unless the court has any other questions, we'll rest on our breath. It appears not. Nope. Thank you. Your Honors, we have devoted all of our time to what was essentially 5% of my brief and maybe 5% of their brief. In all fairness to the government, I think I'm obligated to submit the rest of my arguments about substantial similarity and passing all four tests on the statements in my reply brief. Can I ask you? I think that's fair. I think you're right. But the arguments are well laid out in both parties' briefs, I think. On the due process issue, you heard government counsel say, well, you know what? If you really want some kind of a pre-deprivation review by a court, just don't pay it and make them come after you. And I guess that was an option. But I assume there's some reason why most people pay the money and then seek to get a refund. So why not just say, you know what? I don't think I owe that, so you come get it from me, and then at that point I'll be able to fight you in court. Actually, you can't fight in court at that time, as Judge Rawlinson pointed out. The letter that they sent, all of these letters always say you have an opportunity for an appeals conference. Now, we can either say yes or no. If we say no, then we've squandered our opportunity. And when we get to the collection due process stage, they do not have jurisdiction to consider the correctness of the liability, only whether the procedures have been correctly followed with the levy and the lien proceedings. So once that appeals conference opportunity goes out, whether we say yes or whether we say no, there's never going to be that second opportunity, you know, after or as they try to collect the house, you know, sell the house and levy on the bank account, et cetera. And that's a fundamental flaw in the government's argument. There will never, ever in any of these cases, ever be a real collection due process hearing because they don't have jurisdiction on that. And as the Davis case, cited at page 28, points out, the tax court can't look at it either once the appeals conference is offered. So you heard your opponent here say that actually the appeals conference does have the authority to resolve these penalties. And you say no. So what are you relying on? We didn't really get a. Page 28 of my brief, I list the various restrictions. That's what you're talking about. And Judge Rawlinson pointed out, the statute itself says the government, the commissioner cannot rescind it, and the tax court can't second-guess that. That's the problem. Listed transactions is accepted. Right. In the letter from the IRS. Right. It's completely off the table at appeals. Her argument was that the broad authority to settle supersedes the letter. What's your response? As I pointed out on page 28, that broad authority is not as broad as she wants to portray it. There are a lot of limitations, including the limitation in this case. So I hope I've been able to resolve this, Your Honor, and I hope you see clear to follow the Jolly case and apply those rules.  Thank you to both counsels. Thank you, Your Honor. I don't have time for arguments in this case. The case, as argued, is submitted for decision by the court. That completes our calendar for the morning. We are in recess until 9.30 a.m. tomorrow morning. All right. Okay.
judges: Tashima, Rawlinson, Watford